UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PROJECT SOUTH <br><br> and <br><br> RINA HERNANDEZ, <br><br>    Plaintiffs, <br><br>   v. <br><br><br> U.S. IMMIGRATION & CUSTOMS ENFORCEMENT <br><br> and <br><br> U.S. CITIZENSHIP AND IMMIGRATION SERVICES, <br><br>    Defendants. | Civ. A. No. 19-0895 (APM) |

## JOINT STATUS REPORT

The Parties, by and through the undersigned counsel, have met and conferred and hereby submit this Joint Status Report pursuant to this Court's May 8, 2019, Order. *See* ECF No. 5.

Before the Court is a Complaint filed by Plaintiffs Project South and Rina Hernandez ("Plaintiffs") under the Freedom of Information Act ("FOIA") against Defendants U.S. Immigration and Customs Enforcement ("ICE") and U.S. Citizenship and Immigration Services ("USCIS"). The FOIA request that forms the basis for this litigation was submitted to ICE on May 1, 2018. *See* ECF No. 1-6. Plaintiffs sought records relating to the Stewart Detention Center ("SDC") as well as records relating to Yulio Castro-Garrido. With respect to SDC, Plaintiffs specifically requested:

- "all records relating to ICE's standards of operation at SDC, including its standards for medical care as well as ICE's records of contracts and communications regarding the provision of medical care for the immigrants detained at SDC"; and

- "all records in ICE's possession relating to the conditions at SDC including records of confinement in segregation, daily schedules of personnel and inmates from November 2017 until February 2018, maintenance and cleaning records for inmate housing, any complaints or correspondences to or from ICE personnel regarding conditions at SDC, and any reports or recommendations made regarding the quality or conditions of inmate life at SDC."

ECF No. 1-6.  In terms of the records pertaining to Mr. Castro, Plaintiffs sought all records in

ICE's possession, including:

- All records pertaining to the circumstances leading to Mr. Castro's death, including but not limited to any and all medical and mental health records, reports, notes, forms, complaints, incident reports, supplementary reports, witness statements, daily activity logs, incident detail reports, and video and audio recordings.

- All records pertaining to Mr. Castro's detention, including detainee location logs, kites, grievances, responses to kites and grievances, and medical and mental health screenings and assessments.

- All of the above records relating to Mr. Castro's incarceration at the D. Ray James contract facility, to the extent that such records have been made available to ICE.

- All records pertaining to any investigations of the circumstances surrounding Mr. Castro's arrest, detention, and/or death that are being conducted by the ICE Office of Professional Responsibility, ICE Office of Detention Oversight, or any other U.S. Department of Homeland Security entity or other government entity.

- All records and communications between ICE and the healthcare facilities at which Mr. Castro was treated, including: the Southwest Regional Medical Center (SWRMC) in Cuthbert, Ga.; Phoebe Putney Memorial Hospital in Albany, GA; and the Mayo Clinic in Jacksonville, FL. This request includes a request for all internal communications involving ICE Health Service Corps (ISHC) medical personnel, as well as any and all other records with other external healthcare providers for the purpose of acquiring treatment for Mr. Castro.

- All documents or copies thereof that may have accompanied Mr. Castro when he was transferred from one facility to another, including without limitation:

  (a)    Any Form 1-216 and/or appropriate copies of Form 1-77, Baggage Check (or IGSA equivalent);

(b)     Any Form USM-553 or local Medical Transfer Summary form;

(c)     Any Form 1-213, Record a/Deportable Alien Form;

(d)     Any original or photocopy of Form I-203/203A, Order to Detain/Release Alien;

(e)     Any Detainee Transfer Checklist;

(f)     Any age verification documents (if applicable);

(g)     Any copy or printout of all previous Post Order Custody Reviews (POCRs) and travel document requests in a property envelope fastened to the file;

(h)     Any classification sheet;

(i)     Any charging documents/records of proceedings;

(j)     Any certified copies of convictions;

(k)     Any fingerprint cards;

(1)     Any photographs; and

(m)     Any printouts from the Central Index System (CIS), ENFORCE and the FBI NCIC database.

*Id.*

**Defendants' Status Report and Position:**

On May 2, 2108, ICE acknowledged receipt of Plaintiffs' request and referred a portion of that request to USCIS because USCIS is the custodian of Mr. Castro's Alien File ("A-file"), which might contain records responsive to the request.  *See* Compl., ECF No. 1, at ¶ 46.  Defendants filed their answer on May 6, 2019.  *See* Answer, ECF No. 4.

To date, ICE has completed its searches within the Office of Public Affairs and has a number of searches pending and/or underway in other offices pursuant to the May 1, 2018 request. ICE is willing to focus its search efforts exclusively on attempting to locate and process responsive documents that fall into the six categories Plaintiff has identified to be of greatest interest, to the

extent those documents exist.  Those categories are as follows:  (i) the ICE Health Service Corp ("IHSC") Mortality Review; (ii) IHSC Root Cause Analysis; (iii) Mr. Castro's eClincial Works Medical Records File; (iv) ICE's Detainee Death Review; (v) Mr. Castro's detainee file; and (vi) outward and upward facing communications between IHSC providers or officers at SDC with outside medical providers or their supervisory chain of command within ICE.  By focusing its search efforts solely on these categories of documents, to the extent they exist, ICE will likely be able to process and produce any responsive documents in a timelier manner than if it has to process all of the search results for the broad May 1, 2018, request.  However, ICE is unable to complete these narrowed searches *and* process and produce *all* the responsive documents that may be located by June 30, 2019, the date upon which the narrowed request is conditioned.

Indeed, ICE has experienced a 91% increase in FOIA requests between fiscal year 2017 and fiscal year 2018.  Its FOIA office has received approximately 40,000 requests to date for this fiscal year, in addition to over 30,000 referrals from other components and agencies.  Based on the current workload, ICE anticipates that some of its searches in this case will likely be completed by approximately June 17, 2019, the date Plaintiffs propose to file a summary judgment motion on expedited processing.[1]

---

[1] Below Plaintiffs also indicate that they will "seek an order deeming the allegations in [certain] paragraphs [of the Complaint] admitted" if Defendants do not supplement certain responses in the Answer.  Relying on *Djourabchi v. Self*, 240 F.R.D. 5 (D.D.C. 2006), Plaintiffs contend that Defendants have "failed to fulfill their duty to investigate facts clearly and unambiguously within their control and provide responses thereto."  However, the facts in this case are clearly analogous to those in *Clay v. District of Columbia,* 831 F. Supp. 2d 36 (D.D.C. 2016) in which the court found that *Djourabchi* was inapposite.  In *Clay,* the court noted that the plaintiff in *Djourabchi* was a general contractor who denied knowledge or information sufficient to respond to the allegation that he was licensed to work in the District of Columbia, which was "a fact that should have been patently obvious to him." *Clay,* 831 F. Supp. 2d at 47 (citations omitted).  However, in *Clay,* the defendant was a large, governmental entity, the District of Columbia, which denied knowledge and information sufficient to respond to allegations about a single student in a large school system. *Id.*  Similarly, ICE is a large governmental entity that is responsible for thousands

ICE has begun processing the results it has received thus far – approximately 100 pages – and expects to make an initial release of any responsive records on May 31, 2019.   In addition, ICE anticipates releasing the non-exempt portions of the Detainee Death Review Report, one of the categories of documents in which Plaintiffs are particularly interested, in the May production. Beginning in June, ICE expects to process search results at a rate of approximately 500 pages a month, but the number of pages, if any, produced monthly will vary.  ICE anticipates being in a position to release non-exempt portions of Mr. Castro's medical records and some non-exempt portions of the outward and/or upward facing communications Plaintiffs seek in the June production.  As ICE continues to receive search results containing those other categories of documents in which Plaintiffs are particularly interested, should they exist, ICE will prioritize the processing of those search results to the extent possible.

Due to its FOIA backlog, USCIS has not yet begun processing Plaintiffs' FOIA request, but has logged it into the processing queue.  However, Defendants believe that the records of greatest interest to Plaintiffs are most likely in the possession of ICE.

At this time, Defendants do not expect to file a motion for a stay under *Open America v. Watergate Special Prosecution Force,* 547 F.2d 605 (D.C. Cir. 1976). Defendants further respectfully request that the Court defer setting a briefing schedule for dispositive motions to allow ICE time to produce any responsive records.

Defendants propose filing a joint status report on June 21, 2019.

---

upon thousands of detainees. The ICE office tasked with the litigation of FOIA cases does not possess the knowledge and information sufficient to respond to certain allegations in the Complaint.  Furthermore, this litigation was filed pursuant to the FOIA, and Defendant's responses to the allegations in Plaintiff's Complaint that are being challenged do not relate, in any way, to the FOIA, nor do they relate to the basis for the Plaintiff's immediate Complaint.

**Plaintiffs' Position:**

On May 8, 2019, Plaintiffs requested Defendants amend their Answer to provide responses consistent with their obligations under Fed. R. Civ. P. 8(b). Defendants' answers to Paragraphs 1-2, 15-39, and 62, incorrectly aver that Plaintiffs' allegations "do not set forth a claim for relief or aver facts in support of a claim to which a response is required." Plaintiffs further objected to Defendants' Answers in Paragraphs 1-2, 11, 15, 24, 27-29, 35 and 39 on the basis that Defendants have failed to fulfill their duty to investigate facts clearly and unambiguously within their control and provide responses thereto. *See Djourabchi v. Self*, 240 F.R.D. 5, 12 (D.D.C. 2006) ("[A] party may not deny sufficient information or knowledge with impunity, but is subject to the requirements of honesty in pleading. An averment will be deemed admitted when the matter is obviously one to which a defendant has knowledge or information. . . . Moreover, a party may be held to the duty to exert reasonable effort to obtain knowledge of such a fact."). Plaintiffs renew their request that Defendants supplement their Answer. If they fail to do so Plaintiffs will seek an order deeming the allegations in those paragraphs admitted.

Based on the current status of the agencies' searches and agencies' proposed production schedule, Plaintiffs intend to seek summary judgment on their expedited processing claims. There is currently no end in sight, despite the passage of over a year since Plaintiffs filed their claims. Though Plaintiffs have offered to significantly narrow the scope of all required searches by identifying six specific categories of information, Defendants have elected instead to proceed without narrowing the tasked searches, and produce documents in a scattershot, piecemeal fashion over an indefinite period of time.

Accordingly, Plaintiffs propose the following briefing schedule on their expedited processing claims (Counts 1 & 2):

Plaintiffs' Motion for Summary Judgment                    June 17, 2019

Defendants' Response                                       July 8, 2019

Plaintiffs' Reply                                          July 15, 2019

Dated: May 23, 2019                    Respectfully submitted,

                                       JESSIE K. LIU, D.C. Bar. No. 472845
                                       United States Attorney

                                       DANIEL F. VAN HORN, D.C. Bar No. 924092
                                       Chief, Civil Division

                       By:     *Denise M. Clark*_____
                                       Denise M. Clark, D.C. Bar No. 479149
                                       Assistant United States Attorney
                                       Civil Division
                                       555 Fourth Street, N.W.
                                       Washington, D.C. 20530
                                       Tel: (202) 252-6605
                                       Email: Denise.Clark@usdoj.gov

                                       *Attorney for Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PROJECT SOUTH<br><br>and<br><br>RINA HERNANDEZ,<br><br>       Plaintiffs,<br><br>     v.<br><br>U.S. IMMIGRATION & CUSTOMS ENFORCEMENT<br><br>and<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)      Civ. A. No. 19-0895 (APM) |

**[PROPOSED] ORDER**

Upon consideration of the parties' Joint Status Report, and the entire record herein, it is

hereby **ORDERED** that the parties' joint status report is due on June 21, 2019.

It is **SO ORDERED** this \_\_\_\_\_ day of _____, 2019.


_____
AMIT P. MEHTA
UNITED STATES DISTRICT COURT JUDGE